IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ROBERT MITCHELL JR., individually and on behalf of all others similarly situated, | CV 25–52–BLG–DLC |
| Plaintiff, | ORDER |
| v. | |
| VALLEY FINANCIAL CREDIT UNION, | |
| Defendant. | |

Before the Court is Defendant Valley Financial Credit Union's ("VCU" or "Defendant") Motion to Compel Arbitration pursuant to the Montana Uniform Arbitration Act, Montana Code Annotated § 27-5-111, and the Federal Arbitration Act, 9 U.S.C. § 1. (Doc. 27.) For the reasons herein, the Motion will be denied.

**BACKGROUND**

VCU is a member-owned, not-for-profit cooperative financial institution which provides account and loan services to its members. (Doc. 15-1 ¶ 4.) Plaintiff Robert Mitchell Jr. ("Mitchell" or "Plaintiff") opened a VCU membership on November 13, 2020. (*Id.* ¶ 6.) In doing so, Plaintiff signed an Account Card agreeing to comply with the terms and conditions of the Membership Agreement then in place (*Id.*) The Account Card specifically provided that "[b]y signing

1

below, I/we agree to the terms and conditions of the Membership and Account Agreement . . . and to any amendment the Credit Union makes from time to time which are incorporated herein. I/We acknowledge receipt of a copy of the agreements and disclosures applicable to the accounts and services requested herein." (*Id.*) The Membership and Account Agreement did not contain any terms relating to arbitration, alternative dispute resolution, or class actions. (*See generally* Doc. 15-3.) The Membership and Account Agreement further informed members that "[a]ny written notice we give to you is effective when it is provided electronically or is deposited in the U.S. mail, postage prepaid, and addressed to you at your statement mailing address, and will be effective whether or not received by you." (Doc. 15-1 ¶ 7.)

VCU claims that it mailed a letter, entitled "Notice," to all VCU members, on or around April 4, 2022. (*Id.* ¶ 10.) The Notice included an offer to enter into an arbitration agreement with an opt-out provision and class action waiver agreement (together the "Arbitration Agreement"). (*Id.* ¶ 8.) The Arbitration Agreement provides in bold, capital letters: "**40. BINDING ARBITRATION OF CLAIMS AND DISPUTES** RESOLUTION OF DISPUTES BY ARBITRATION: THIS SECTION CONTAINS IMPORTANT INFORMATION REGARDING YOUR ACCOUNTS AND ALL RELATED SERVICES." (Doc. 15-3 at 7.) Included in this provision is the following notice, again in all capital letters: "EITHER YOU

2

OR WE CAN REQUIRE THAT ANY DISPUTES BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY TRIAL AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING." (*Id.*)

The Arbitration Agreement further explains:

**Agreement to Arbitrate Disputes.**
Either you or we may elect, without the other's consent, to require that any dispute between us concerning your accounts and the services related to your accounts be resolved by binding arbitration, except for those disputes specifically excluded below . . . .

**Disputes Covered by Arbitration.**
Claims or disputes between you and us arising out of or relating to your account(s), transactions involving your account(s) . . . and any related services with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future. Disputes also include claims or disputes relating to the enforceability, validity, scope or interpretation of any of these arbitration provisions. Any questions about whether disputes are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.

(*Id.*)

The Arbitration Agreement informs members, in capital lettering, that:

3

YOU ACKNOWLEDGE THAT YOU AND WE AGREE THAT NO CLASS ACTION, CLASS-WIDE ARBITRATION, PRIVATE ATTORNEY GENERAL ACTION, OR OTHER PROCEEDING WHERE SOMEONE ACTS IN A REPRESENTATIVE CAPACITY, MAY BE PURSUED IN ANY ARBITRATION OR IN ANY COURT PROCEEDING, REGARDLESS OF WHEN THE CLAIM OR CAUSE OF ACTION AROSE OR ACCRUED, OR WHEN THE ALLEGATIONS OR FACTS UNDERLYING THE CLAIM OR CAUSE OF ACTION OCCURRED. Unless mutually agreed to by you and us, claims of two or more persons may not be joined, consolidated, or otherwise brought together in the same arbitration (unless those persons are joint account holders or beneficiaries on your account and/or related accounts, or parties to a single transaction or related transaction), whether or not the claim may have been assigned.

(*Id.* at 7–8.)

Finally, the Arbitration Agreement includes an opt-out provision:

**Right to Reject this Arbitration Provision.**
You have the right to opt out of this agreement to arbitrate if you tell us within 30 days of the date of a notice of this arbitration provision being added to the Membership and Account Agreement was placed in the mail or email to the address you provided, if applicable, or within 30 days of first being sent or offered any copy of our Membership and Account Agreement with this arbitration provision in it, whichever is sooner. To opt out, send us notice via U.S. Mail or e-mail that you reject this arbitration provision, including your name as listed on your account and your account number to the following address or e-mail address:
Valley Credit Union
ATTN: AUDIT
PO Box 20417
Billings, MT 59104

audit@valleyfcu.com

> Otherwise, this agreement to arbitrate will apply without limitation, regardless of whether 1) your account is closed; 2) you pay us in full any outstanding debt you owe; or 3) you file for bankruptcy.

(*Id.* at 8.) Mitchell denies ever having received the Notice. (Doc. 27-1 ¶ 4.)

On April 22, 2025, Mitchell filed a two-count Class Action Complaint and Demand for Jury Trial against VCU, alleging that VCU violated the Electronic Fund Transfers Act, 15 U.S.C. § 1693, and Regulation E, 12 C.F.R. § 1005, including breach of the implied covenant of good faith and fair dealing based upon VCU's assessment of overdraft fees, and unjust enrichment. (Doc. 1 ¶¶ 91–110.) VCU filed the present Motion seeking to compel arbitration on June 23, 2025, the matter was fully briefed on October 20, 2025, and the Court held oral argument on February 13, 2026.

## LEGAL STANDARD

A "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction" is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The FAA reflects a "national policy favoring arbitration." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). The FAA provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Therefore, while the FAA

"requires courts to enforce [arbitration agreements] according to their terms . . . they may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010). "Because the FAA mandates that 'district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]' the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (citation omitted) (emphasis in original).

To answer the first question—whether a valid arbitration agreement exists—courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The party seeking to compel arbitration must show an agreement to arbitrate exists by a preponderance of the evidence. *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

<strong>DISCUSSION</strong>

Plaintiff does not dispute that his claims fall within the scope of the Arbitration Agreement. (*See generally* Doc. 27.) Rather, Plaintiff argues that (1) he did not accept VCU's offer to submit claims to arbitration under *Myers v. MBNA*; (2) he never received the "Notice"; and (3) under the factors outlined in *Kortum-*

6

*Managhan v. Herbergers NGBL*, 204 P.3d 693 (Mont. 2009), he did not knowingly and voluntarily waive his right to a trial by jury. Because Mitchell did not accept VCU's offer and thus did not enter into the Arbitration Agreement, the Court's analysis will end here.

## I.      Whether the parties formed an agreement to arbitrate

All contracts must contain four essential elements: (1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) consideration. *Kortum-Managhan*, 204 P.3d at 697. As observed by the Montana Supreme Court,

> There must be mutual assent or a meeting of the minds on all essential terms to form a binding contract. Consent is established when there has been an offer and an acceptance of that offer. More specifically, this Court has stated that in order to effectuate a contract there must be not only a valid offer by one party, but also an unconditional acceptance, according to its terms, by the other.

*Keeson Partners v. Ferdig Oil Co., Inc.*, 816 P.2d 417, 421 (Mont. 1991). "Contract terms to which parties did not mutually assent are not valid and enforceable against a party who did not assent." *Lenz v. FSC Sec'ys Corp.*, 414 P.3d 1262, 1272 (Mont. 2018) (citation omitted).

In *Myers v. MBNA America*, 2001 WL 965063, at *1 (D. Mont. 2001), the defendant attempted to add an arbitration clause to the parties' existing contract, advising consumers that "[i]f you do not wish you[r] account to be subject to this Arbitration Section, you must write to us at MBNA America, P.O. Box 15545,

Wilmington, DE . . . . We must receive your letter at the above address by January 25, 2000, or your rejection of the Arbitration Section will not be effective." The defendant argued that because the cardholder permitted such amendments when she accepted the credit card, the arbitration clause was legally binding and enforceable. *Id.* at *2. This Court disagreed, reasoning that plaintiff's mere failure to notify the defendant of her rejection was insufficient to constitute acceptance. *Id.* at *3 ("MBNA skipped offer and went straight to acceptance. [The plaintiff] did not perform an act and did not forego the performance of an act.").

In reaching its conclusion, the Court observed that,

> It should here be plainly set forth that an offeror has no power to cause the silence of the offeree to operate as an acceptance when the offeree does not intend it to do so. The offeree's conduct, coupled with the silence[,] may be such as to make the silence operative. The offeror's own language or other conduct may be such as to make the offeree's silence a sufficient acceptance binding upon the offeror. But an offeror can not, merely by saying that the offeree's silence will be taken as an acceptance, cause it to be such. The offeror cannot force the offeree to take pen in hand, to use a postage stamp, or to speak, under penalty of being bound by a contract by not expressing a rejection.

*Id.* (quoting Joseph M. Perillo, Corbin on Contracts § 3.18 (1993 & Supp. Fall 2000), at 407–08). Indeed, a party's silence or inaction generally constitutes acceptance in three "exceptional circumstances": (1) where an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know they were offered with the expectation of compensation; (2) where the

8

offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer; and (3) where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept." Restatement (Second) of Contracts § 69(1) (Am. Law. Inst. 1981).

Relying on *Rodriguez v. Instagram*, 2014 WL 895438 (Cal. Super. Feb. 28, 2014), VCU argues that requiring accountholders to affirmatively opt out of an agreement is reasonable and necessary in many areas of commerce, including dealings with financial institutions. (Doc. 29 at 7–8.) *Rodriguez*, however, applied California state contract law and principles, and this Court is bound by Montana law. 2014 WL 895438, at *3 ("as some federal courts (applying California law) have noted, [*Badie v. Bank of America*, 67 Cal. App. 4th 779 (1998)] is distinguishable where there is an opportunity to opt out before new terms go into effect.").

Because arbitration is a matter of contract, the Court must look to Montana state law to determine whether Mitchell manifested an intent to accept VCU's offer to arbitrate. And although it does not appear the Montana Supreme Court has spoken directly to the issue of opt-out provisions in this particular context, *Myers*— a case out of this District and cited favorably by the Montana Supreme Court in

*Kortum-Managhan*—is factually on point and, in the Court's view, indistinguishable from the case at bar. Thus, *Myers* controls the analysis.

Here, as in *Myers*, VCU presented the Arbitration Agreement as a change to the terms of the parties' relationship that would become effective unless rejected by the credit union member. And as in *Myers*, the only circumstance indicative of Mitchell's acceptance was his failure to notify VCU that he rejected their offer; this circumstance "is dismissed by Perillo [of Corbin on Contracts] and by common sense." *Myers*, 2001 WL 965063, at *4. Indeed, the "mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to remain silent without accepting." Restatement (Second) of Contracts § 69 cmt. c. Instead, VCU must show that Mitchell intended to accept the offer "by remaining silent and inactive." *Id.* § 69(1)(b). Even assuming Mitchell was aware of the offer to arbitrate—a fact which he disputes—there is simply no evidence of his intention to accept the Arbitration Agreement. Indeed, by choosing to file this class-action with the trial court, Mitchell's actions point in the opposite direction.

Finally, VCU argues that unlike the right to a trial by jury, there is no substantive right to class action procedures. (Doc. 29 at 12) (citing *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 357 (5th Cir. 2013)). Although VCU is correct in this respect, VCU fails to provide support for its argument that the standalone

Class Action Waiver must be treated as any other provision in the Membership Agreement. (*Id.* at 13.) Rather, because the Class Action Waiver—like the agreement to arbitrate—falls outside the scope of the parties' original Membership Agreement, it requires additional evidence of assent. *See Myers*, 2001 WL 965063, at *5 (observing that, under defendant's line of argument, it could amend its agreement to include a provision taking a security interest in the cardholder's home or requiring the cardholder to pay a penalty if she failed to convince three friends to sign up for credit cards). For this same reason, Mitchell's assent cannot be implied from his prior agreement to abide by VCU's amendments to the Membership Agreement. (*See* Doc. 15-3 ¶ 23(b)) ("we may change the *terms of this Agreement* at any time) (emphasis added).

Because VCU has failed to demonstrate the parties entered into an agreement to arbitrate and to waive class actions under Montana law, the Court must deny its Motion.

### CONCLUSION

Accordingly, for the reasons stated above, VCU's Motion to Compel Arbitration (Doc. 14) is DENIED. A preliminary pretrial conference will be set by separate order.

DATED this 1st day of May, 2026.

Dana L. Christensen, District Judge
United States District Court